UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

CHRISTOPHER B.,                            )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )          Case No. 4:20-cv-00203-TWP-DML
                                           )
KILOLO KIJAKAZI, Acting Commissioner of    )
Social Security,[1]                        )
                                           )
                    Defendant.             )

## ENTRY ON JUDICIAL REVIEW

Plaintiff Christopher B.[2] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying his application for Supplemental Security Income ("SSI") under the Social Security Act.  For the following reasons, the Court **affirms** the decision of the Commissioner.

## I.     PROCEDURAL BACKGROUND

On April 25, 2019, Christopher B. filed an application for SSI, alleging a disability onset date of August 31, 2017.  (Filing No. 13-5 at 12.)  His application was initially denied on June 3, 2019, (Filing No. 13-4 at 6), and upon reconsideration on August 22, 2019, (Filing No. 13-4 at 18).  Administrative Law Judge D. Lyndell Pickett (the "ALJ") conducted a hearing on April 6, 2020, at which Christopher B., represented by counsel, and a vocational expert ("VE") appeared and testified.  (Filing No. 13-2 at 49-69.)  The ALJ issued a decision on April 15, 2020, concluding

---

[1] After the removal of Andrew M. Saul as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

[2] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

that Christopher B. was not entitled to receive benefits.   (Filing No. 13-2 at 26-41.)   The Appeals Council denied review on August 6, 2020.   (Filing No. 13-2 at 2.)   On October 5, 2020, Christopher B. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying him benefits.   (Filing No. 1.)   Jurisdiction is also proper pursuant to 42 U.S.C. § 1383(c).

## II.   <u>STANDARD OF REVIEW</u>

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).   Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).   To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.   42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.   At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors.   20 C.F.R. § 416.920(a)(4)(i).   At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled.   20 C.F.R. § 416.920(a)(4)(ii).   A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).   At step three, the Commissioner determines whether the claimant's impairment or combination of

impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps.  *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).  Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations."  *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)[3]; Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184).  At step four, if the claimant can perform his past relevant work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  The claimant is not disabled if he can perform any other work in the relevant economy.  *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Stephens*, 888 F.3d at 327.  For the purpose of judicial review, "substantial

---

[3] The Code of Federal Regulations contains separate, parallel sections concerning Disability Insurance Benefits and SSI, which are identical in most respects.  Cases may reference the section pertaining to the other type of benefits. *See Craft*, 539 F.3d at 676 (citing 20 C.F.R. § 404.1545(a)(1)).  Generally, a verbatim section exists establishing the same legal point with both types of benefits.  *See, e.g.*, 20 C.F.R. § 416.945(a)(1).  The Court will detail any applicable substantive differences but will not always reference the parallel section.

evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

### III.   FACTUAL BACKGROUND

Christopher B. filed his application for SSI on April 25, 2019, alleging that he could no longer work because of generalized anxiety disorder, a tic disorder, asthma, and childhood-onset fluency disorder (stuttering). (Filing No. 13-6 at 4.) He was born in June 1991 and was 27 years old when he filed his application. (*See* Filing No. 13-5 at 12.) He had completed high school and

vocational school to be an automotive mechanic and truck driver.   ([Filing No. 13-6 at 5](#).) Christopher B. had previously worked as a truck driver, cook, and grocery stocker.   ([Filing No. 13-6 at 5](#).)  He reports that he stopped working in August 2017 because of his blinking, stuttering, and inability to sleep; in addition, he could not walk a block because of flat feet and knee pain. *Id*. at 87.  The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here.  Below are the facts relevant to the Court's disposition of this case.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a)(4) and concluded that Christopher B. was not disabled.  ([Filing No. 13-2 at 40-41](#).)  At step one, the ALJ found that Christopher B. had not engaged in substantial gainful activity[4] since April 25, 2019, the application date.[5]  ([Filing No. 13-2 at 32](#).)  At step two, the ALJ found that Christopher B. had "the following severe impairments: asthma, bilateral pars defect of the lumbar spine, obesity, anxiety and obsessive-compulsive disorder."  ([Filing No. 13-2 at 32](#) (citation omitted).)  At step three, the ALJ found that Christopher B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  ([Filing No. 13-2 at 33](#).)  After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant is able to understand, carry out and remember simple instructions.  The claimant is able to respond appropriately to supervisors and coworkers in usual work situations.  The claimant is able to deal with changes in a routine work setting.  The claimant should not engage in work that requires working with the general public.  The claimant should have no more than occasional interaction with supervisors and coworkers.  The claimant should have no more than occasional exposure to extreme heat and cold.  The claimant

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 416.972(a).

[5] SSI is not compensable before the application date.  20 C.F.R. § 416.335.

should have no more than occasional exposure to humidity. The claimant should have no more than occasional exposure to fumes, odors, dust, gases and poor ventilation. The claimant is able to climb ramps and stairs occasionally. The claimant is able to climb ramps and stairs occasionally. [sic] The claimant is able to balance, stoop, kneel, crouch and crawl occasionally. The claimant is able to frequently handle and finger with the right dominant hand.

(Filing No. 13-2 at 35-36.) At step four, the ALJ found, considering the VE's testimony and Christopher B.'s RFC, that he could not perform his past relevant work as a tractor-trailer truck driver. (Filing No. 13-2 at 39.) At step five, the ALJ found, considering the VE's testimony and Christopher B.'s age, education, work experience, and RFC, that he could perform other work with jobs existing in significant numbers in the national economy in representative occupations such as a warehouse worker, machine feeder, and factory helper. (Filing No. 13-2 at 40.)

## IV.   DISCUSSION

Christopher B. makes three assertions, that: (1) the ALJ's conclusion that his speech impairment was not severe is not supported by substantial evidence and the ALJ erred by not including any resulting limitations in his RFC, (Filing No. 15 at 17-19); (2) the ALJ's analysis of his psychological impairments is not supported by substantial evidence, (Filing No. 15 at 19-20); and (3) the Appeals Council erred in determining that new evidence submitted on appeal did not relate to the period at issue, (Filing No. 15 at 20-21). The Court will address the arguments in turn.

### A.   Speech Impairment

Christopher B. contends that the ALJ failed to build a logical bridge from the record evidence to his conclusions that Christopher B.'s childhood-onset speech fluency disorder (stuttering) and nervous tics (including excessive and uncontrollable blinking) were not severe impairments and did not result in any functional limitations. (Filing No. 15 at 17.) He also contends that the ALJ's reliance on his ability to earn substantial gainful activity for six months as

6

a truck driver is not substantial evidence that his speech impairment was not severe.  (Filing No. 15 at 17-18.)  Christopher B. asserts that the ALJ did not include any limitations in his RFC "related to" his speech impairment.  (Filing No. 15 at 18.)  In particular, he argues that the ALJ did not address the fact that he avoids phone calls, ordered food, and socially isolates, and avoids eye contact because of his speech. (Filing No. 15 at 18.)

At step two, the ALJ concluded that "fluency disorder" and "excessive eye blinking" were not severe impairments.  (Filing No. 13-2 at 32.)  The ALJ provided a comprehensive summary of the relevant evidence:

> The claimant underwent a speech and language evaluation before the alleged onset date in 2016 (Exhibit 1F).  He reported having a stutter since childhood and he received speech therapy in school (Exhibit 1F).  The claimant did present with a fluency disorder and his dysfluencies were characterized by prolongations of up to four seconds (Exhibit 1F).  He indicated that he would not order food at a drive[-]through and he will only take a phone call if he knows someone that is familiar with his dysfluency (Exhibit 1F).  The summary findings were that of an overall mild cognitive deficit based upon standardized assessment with profound fluency disorder (Exhibit 1F).  In July of 2018, treating notes mention that the claimant stuttered since childhood (Exhibit 5F).  This did not prevent him from working at the level of substantial gainful activity in the past.  Treating notes from August of 2018 noted his speech was normal, while also noting mild stuttering at times and other times bad stuttering (Exhibits 4F and 5F).  The claimant denied at this time that his stuttering worsens with nervousness (Exhibit 5F).  In February of 2019, the claimant reported that his stuttering had worsened (Exhibit 4F).  He sought treatment in March of 2019 for stuttering and facial twitching (Exhibit 7F).  The undersigned noted that though the claimant stuttered at times during the hearing, he was understandable during the hearing.  The claimant was noted to have excessive eye blinking at an exam in 2016, where he avoided eye contact during much of his conversational tasks (Exhibit 1F).  He underwent EEG testing for his excessive blinking but the results were normal (Exhibit 4F).  In July of 2018, treating notes mentioned that he had experienced slight facial tics while growing up that mainly involved blinking (Exhibit 5F).  He indicated that these became more noticeable when he turned 22 years old (Exhibit 5F).  The claimant reported in February of 2019 that his excessive blinking was worse but in March of 2019, it was described only as intermittent (Exhibit 4F).  He testified that his blinking is uncontrollable and it happens every other day, sometimes lasting up to a week.

(Filing No. 13-2 at 32-33.)

The Seventh Circuit has held that "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Castile v. Astrue*, 617 F.3d 923, 926–27 (7th Cir. 2010) (citing 20 C.F.R. § 404.1523; *see Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of the entire constellation of ailments—including those impairments that in isolation are not severe.")).   "Therefore, the step two determination of severity is 'merely a threshold requirement.'"   *Castile*, 617 F.3d at 927 (quoting *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999)).  Here, the ALJ found that Christopher B. had severe impairments, and he assessed an RFC.

Regarding the ALJ's RFC finding, the Seventh Circuit has explained that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)); *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [he] offered no opinion from any doctor to set . . . any other limits, greater than those the ALJ set.").  The Court cannot reweigh the evidence to "intuit" or "infer," for example, a qualitative limitation with interaction with coworkers or supervisors that is unsupported by any medical opinion, and "[t]he ALJ was not required to impose such a limitation in the RFC, much less explain [his] decision not to." *Reynolds v. Kijakazi*, 25 F.4th 470, 2022 WL 291721, at *3-4 (7th Cir. Feb. 1, 2022).  A diagnosis alone does not establish functional limitations, and the claimant has the burden to demonstrate that he has a medically determinable impairment that results in specific functional limitations. *Schmidt v. Barnhart*, 395 F.3d 737, 745–46 (7th Cir. 2005); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir.

2004); 20 C.F.R. § 416.912(a).  In *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021), for example, the court explained that the ALJ's failure to include any manipulative limitations in his RFC finding was not error, despite the presence of a severe impairment, carpal tunnel syndrome, because the ALJ acknowledged the claimant's reported difficulties using his hands, he determined that the alleged limitations were not supported by the record, and no doctor who addressed the impairment ever deemed the claimant to have manipulative limitations.  Here, no medical source assessed any specific functional limitations that were more restrictive than the ALJ's RFC assessment, either caused by Christopher B.'s speech impairment or any other impairment.

During the reconsideration phase, on July 16, 2019, Christopher B. completed standardized language and cognitive testing at the request of the Disability Determination Bureau that was performed by a certified clinical speech-language pathologist, who concluded that he had a "severe fluency disorder" and "mild deficits in memory and attention which correlates to an overall mild cognitive communication deficit."  (Filing No. 13-7 at 102-03.)  The consultative examiner pathologist rated the severity of tested subparts as demonstrating that Christopher B. was mildly impaired with memory and language, but "within normal limits" concerning attention, executive functions, visuospatial skills, clock drawing, and in terms of his overall composite severity rating.  (Filing No. 13-7 at 106.)  A state agency consultant, another certified clinical speech-language pathologist, reviewed the record on July 17, 2019, including the consultative examination findings performed the previous day, and concluded that for purposes of Christopher B.'s disability claim, his speech impairment was "not severe" because "functional language [was] adequate."  (Filing No. 13-3 at 28-29.)  According to the SSA's regulation, a properly certified, "qualified speech-language pathologist" is considered an acceptable medical source to give medical opinions "for speech or language impairments only."  20 C.F.R. § 416.902(a)(5).  The ALJ's finding that

Christopher B.'s speech impairment was not severe is supported by the uncontradicted medical opinions of record.

The ALJ also relied on his observations during the hearing. The ALJ noted that though Christopher B. stuttered at times during the hearing, he was still understandable, further suggesting that the ALJ did not believe that Plaintiff had shown that his stutter resulted in an inability to communicate (Filing No. 13-2 at 33). The Seventh Circuit has held:

> [A]n ALJ's observations are adduced at the hearing just as the testimony and evidence given before any other fact are all part of the case which the trier of fact decides. We have held that "an ALJ does not commit an impropriety when he relies on his own observations during a hearing concerning the severity of a claimant's claim. Such observations are credibility determinations and are entitled to considerable weight."

*Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989) (quoting *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982)); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Dray v. Railroad Retirement Bd.*, 10 F.3d 1306, 1314 (7th Cir. 1993); *Erhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 541 (7th Cir. 1992); *Strunk v. Heckler*, 732 F.2d 1357, 1362 (7th Cir. 1984)). Christopher B. testified that his nervous tics may occur "at any time" that he was "anxious." ([Filing No. 13-2 at 60](#).) The ALJ asked him, "Is there anything you can think of, especially at a work situation, that causes you to get anxious or nervous that will bring the tic on?" ([Filing No. 13-2 at 61](#).) Christopher B. responded, "Talking on the phone. I've had like a stuttering problem my whole life. It's messing me up." ([Filing No. 13-2 at 61](#).) Everyone participated in the hearing by telephone because of the pandemic. ([Filing No. 13-2 at 50](#).) However, the ALJ found Christopher B. understandable and able to effectively communicate what he needed to over the course of the hearing.

The ALJ also considered that Christopher B. was able to earn substantial gainful activity with his speech impairment. Christopher B. contends that this is not a reasonable basis to deny his

claim, noting that he demonstrated the ability to earn substantial gainful activity for only six months as a truck driver.  However, Christopher B.'s work history with "long-standing complaints" is a relevant consideration.  *See Castile*, 617 F.3d at 927-28.  Furthermore, the ALJ did not rely solely on that valid consideration, but he also considered the rationales described above.

Even though the ALJ did not find Christopher B.'s speech impairment severe, the Court is unpersuaded that his RFC finding failed to provide relevant limitations.  The ALJ limited Christopher B. to carrying out only simple instructions, no work with the general public, and only occasional interaction with supervisors and coworkers.  The VE testified that at least two of the occupations, warehouse worker and machine feeder, that the ALJ relied upon as the basis of the step five denial, as well as additional example occupations at the light and sedentary exertional level, could be performed with all the limitations that would ultimately comprise Christopher B.'s RFC, and those occupations would require only "[m]inimal speaking," "no more than 10 percent of the day. . . ."  (*See* Filing No. 13-2 at 61-65.)  The VE continued:

> These example jobs, speaking would only be required to the extent that perhaps to acknowledge to a supervisor that they understand the instructions.  If you're a packer, you need to put these items in these boxes.  Speaking to do that job would not be required, maybe just to understand or acknowledge.  Does that make sense?

(Filing No. 13-2 at 63.)  The ALJ, "Yes, I just wanted to clarify as much as I could.  He could possibly nod or shake his head?"  (Filing No. 13-2 at 64.)  The VE, "In my opinion, yes, Judge." (Filing No. 13-2 at 64.)

Christopher B. contends that the VE's testimony was speculative and unsupported, but the expert testimony is uncontradicted in the record and Christopher B. neither cross-examined the VE, nor has he asserted any basis on appeal to doubt the VE's testimony.  Christopher B. has waived any challenge to the VE's testimony by failing to develop his argument on appeal, regardless of whether forfeiture would apply to his failure to challenge the testimony during the

hearing.  The Seventh Circuit has held in a social security disability context that "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."  *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)).  Considering the medical opinions that Christopher B.'s functional ability to communicate was preserved, despite his stutter, as well as the VE's testimony that speaking would be required at only a minimal level to perform certain qualifying occupations, the ALJ's step five denial is supported by substantial evidence that other work was possible with Christopher B.'s speech impairment.

**B.    Psychological Impairments**

Christopher B. next challenges the ALJ's RFC finding concerning his psychological impairments.  (Filing No. 15 at 19.)  He contends that the "ALJ discussed evidence" of his substance use that predated his filing date, "[h]owever, there is no evidence to suggest that [his] substance use was material to his disability during the relevant time period."  (Filing No. 15 at 19.) He asserts that "[t]he ALJ concluded that [he] had improved with mental health treatment and was able to engage in activities like video games, basketball, shooting pool, watching moves, and watching television.  However, the ability to engage in these leisure activities does not represent any ability to sustain work."  (Filing No. 15 at 19 (citations omitted).)  He also contends that the ALJ's reference to improvement—without him citing the record—is unsupported by substantial evidence.  (Filing No. 15 at 19.)  Christopher B. further asserts that the ALJ's failure to address an "opinion statement" from a consulting neurologist that his "stutter and tics were likely a physical manifestation of psychological impairments" is harmful error.  (Filing No. 15 at 20.)

To reiterate, Christopher B. has a significant burden to overcome because there was no medical opinion that set more restrictive limitations than the ALJ's RFC finding or at least he has

not asserted that any medical opinion set more restrictive limitations based on his psychological impairments.  The reviewing psychological consultants thought that Christopher B. could work with detailed but not complex tasks, "manage occasional contact with the public but sustained interpersonal contact would be precluded," and he would "work best alone, in semi-isolation from other or as part of a small group.  Totality of the [record medical evidence] suggests the claimant seems to be able to maintain at least a minimal level of relationships with others."  (*See, e.g.*, Filing No. 13-3 at 31.)  The ALJ's RFC finding further limited Christopher B. to only simple instructions and no work with the public.

When evaluating a claimant's subjective statements about the intensity and persistence of his symptoms, the ALJ must often, as here, make a credibility determination concerning the limiting effects of those symptoms.  *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).  Reviewing courts "may disturb the ALJ's credibility finding only if it is 'patently wrong.'"  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)).  Reviewing courts examine whether a credibility determination was reasoned and supported, only when an ALJ's decision "lacks any explanation or support . . . will [a court] declare it to be 'patently wrong.'"  *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).  "Credibility determinations will not be overturned unless they are clearly incorrect.  As long as the ALJ's decision is supported by substantial and convincing evidence, it deserves this court's deference."  *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citations omitted); *see Alvarado v. Colvin*, 836 F.3d 744, 749 (7th Cir. 2016) (A credibility determination "tied to evidence in the record" may not be disturbed as patently wrong.).  When evaluating the ALJ's decision for fatal gaps or logical contradictions, reviewing courts give the ALJ's "opinion a commonsensical reading rather than nitpicking at it."  *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999).

On July 19, 2018, after Christopher B.'s alleged onset date, his mental health provider recorded that Christopher B. reported that he "smokes weed daily," and drinks "5-6 beers a day." (Filing No. 13-7 at 40.)  The ALJ's summary of the medical evidence concerning Christopher B.'s mental health impairments included a one sentence reference to his reported substance use.  (Filing No. 13-2 at 38.)  Christopher B. takes issue with the ALJ including the sentence in his summary because his report predated him filing his SSI application, and arguably then the period at issue, even though it postdated his alleged onset date.  *See supra* note 5.  However, the ALJ the properly identified the timing of the evidence "[i]n July of 2018," (Filing No. 13-2 at 38), and Christopher B. presents no authority that the ALJ is unable to summarize evidence that predated his SSI application date.  There is also no indication that the ALJ relied on Christopher B.'s reports to conclude that his substance use was material to his disability claim.

The ALJ also summarized Christopher B.'s reported daily activities.  (Filing No. 13-2 at 38-39.)  The Seventh Circuit has "criticized ALJs for equating activities of daily living with an ability to work."  *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citations omitted).  However, an ALJ may consider the claimant's "description of his daily activities in assessing whether his testimony about the effects of his impairments was credible or exaggerated."  *Id.* (citing 20 C.F.R. § 404.1529(c)(3)(i) (explaining that agency will consider daily activities in evaluating severity of claimant's symptoms); *Pepper v. Colvin,* 712 F.3d 351, 369 (7th Cir. 2013) (agreeing with ALJ's reasoning that claimant's daily activities undermined his testimony about extent of his symptoms).  Christopher B. contends that "[t]he ALJ made no attempt to explain how he felt that [he] could sustain occasional interaction with others when he isolates at home when he is stressed."  (Filing No. 15 at 20.)  On July 19, 2018. Christopher B. reported that he and his brother "will go out and shoot pool."  (Filing No. 13-7 at 41.)  On September 19, 2018, he reported

that he "struggle[d] tremendously with being out in public places where he has to speak," but he was able to "disconnect from his surroundings some by putting in his headphones while he is out doing shopping for his father." (Filing No. 13-7 at 54.)  On March 1, 2019, he reported going "out to eat" with a woman on a date that was setup by their respective mothers.  (Filing No. 13-7 at 70-71.)  Christopher B.'s reported activities demonstrate some ability to function out in the world short of complete isolation of others, and it was reasonable for the ALJ to rely on such activities as one factor supporting his credibility finding concerning Christopher B.'s ability to perform work within the context of his RFC.

The ALJ's summary of the relevant evidence also referenced that Christopher B. had "shown some improvement with mental health treatment . . . ." (Filing No. 13-2 at 38.)  On August 7, 2019, he reported "an improvement in his sleep" disruption, but also reported "increased agitation and anger" in the context of a familial conflict.  (Filing No. 13-7 at 216.)  On February 4, 2020, he reported "some improvement in mood but [he] continue[d] to struggle with grief, depression, and severe anxiety." (Filing No. 13-7 at 205.)  His provider observed that he seemed "more anxious today as evidenced by an increase with his stuttering compared to last session." (Filing No. 13-7 at 205.)  During the hearing, Christopher B.'s counsel asked him about whether his "anger" was still an issue for him, and he responded, "It is, but it's not as bad as when I was younger.  It's gotten much better." (Filing No. 13-2 at 60.)  The ALJ's summary that the record showed some improvement with mental health treatment is supported, even if Christopher B. did not have complete improvement or improvement with all his relevant symptoms.

The record does not show that Christopher B.'s stuttering improved with treatment, but the ALJ did not expressly rely on improvement with all symptoms.  As explained above, the ALJ concluded that Christopher B.'s prolonged response times would not preclude his functional ability

to communicate well enough to perform certain occupations.  The psychological consultants considered his underlying anxiety when they concluded that he could perform work with specific limits on his ability to interact with others.  (*See* Filing No. 13-3 at 31 (the consultants found Christopher B.'s anxiety disorder to be a severe impairment).)

Regarding the etiology of Christopher B.'s speech impairment, he was referred by his primary care doctor for evaluation by a neurologist, Cameron Luo, M.D., on March 25, 2019. (Filing No. 13-7 at 96.)  After examination and reviewing diagnostic testing, Dr. Luo concluded that "[t]he most probable etiology is non-organic and functional, so [a] mental health service evaluation and management may be helpful." (Filing No. 13-2 at 97.)  Christopher B. contends that the ALJ's failure to discuss Dr. Luo's statement is harmful error.  According to the new regulatory scheme for evaluating medical opinions for claims such as Christopher B.'s that were filed on or after March 27, 2017, Dr. Luo's statement does not meet the definition of a medical opinion because he did not assess specific "impairment-related limitations or restrictions."  20 C.F.R. § 416.913(a)(2).  Accordingly, Dr. Luo's statement did not require any special attention in the ALJ's decision and was just one more piece of evidence for the ALJ to consider.  The Seventh Circuit has explained that "an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability."  *Deborah M.*, 994 F.3d at 788 (citing *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)).  The ALJ considered the line of evidence concerning Christopher B.'s mental health impairments, and substantial evidence supports his determination that those impairments were not disabling.  Christopher B. has not demonstrated that the ALJ erred in assessing his RFC or that the ALJ's related credibility finding was patently wrong.

C.      **Evidence Submitted to the Appeals Council**

Christopher B. contends that the Appeals Council erred by not admitting evidence that was submitted on appeal (and remanding the claim back to the ALJ for consideration of the newly admitted evidence).  (Filing No. 15 at 20.)  He further contends that the existing record showed that he had complained of knee pain since 2019, received an injection in his left knee, and underwent physical therapy.  (Filing No. 15 at 20.)  Christopher B. asserts

> The new evidence is a continuation of his treatment and showed evidence that was suspicious for a lateral meniscal tear.  The ALJ found that [his] knee impairment was not medically determinable because of a lack of objective evidence.  The new evidence further clarified [his] knee condition and should have been considered.  The Appeals Council's decision that this evidence was not new and material is contrary [to] the regulations and is harmful error.

(Filing No. 15 at 21.)

At step two, the ALJ found that Christopher B. did not have a medically determinable knee impairment.  (Filing No. 13-2 at 33.)  A regulation explains the type of evidence that is necessary to establish a medically determinable impairment:

> Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.  We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).

20 C.F.R. § 416.921.  The SSA's guidance explains that "[a]n individual's symptoms, such as pain . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present."  SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *3.  In *Stuckey v. Sullivan*, 881 F.2d 506, 508-09 (7th Cir. 1989), the Seventh Circuit explained that the claimant's knee pain was not supported

by radiographic evidence or "any other manifestations of his assertions of pain" and was properly

excluded from the ALJ's consideration of his RFC.

Here, the ALJ explained:

The claimant has also reported left knee pain but imaging revealed no significant findings (Exhibit 9F). He did receive physical therapy in July and August of 2019 (Exhibit 13F). He continued to report left knee pain in September of 2019 (Exhibits 14F and16F[]). The claimant exhibited a non-antalgic gait (Exhibit 14F). The claimant received an injection (Exhibit 14F). The claimant reported daily knee pain and he indicated that he might need surgery. He is no longer doing physical therapy and he tries to not stay on his feet too long. He alleged that his knee gives out on him at times. However, objective findings have been limited and there is no evidence of clear diagnostic or imaging findings.

(Filing No. 13-2 at 33.)

The Appeals Council explained that:

[Christopher B.] submitted records from Clarke Orthopedic Group dated June 24, 2020 through July 20, 2020 (13 pages). The Administrative Law Judge decided your case through April 15, 2020. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 15, 2020.

(Filing No. 13-2 at 3.) "New evidence is 'material' if there is a 'reasonable probability' that the ALJ

would have reached a different conclusion had the evidence been considered." *Schmidt*, 395 F.3d

at 742 (quoting *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)). "Thus, new evidence is

material only if it is relevant to the claimant's condition 'during the relevant time period

encompassed by the disability application under review.'" *Schmidt*, 395 F.3d at 742 (quoting

*Kapusta v. Sullivan,* 900 F.2d 94, 97 (7th Cir. 1990)). On July 8, 2020, an MRI was taken of

Christopher B.'s left knee that showed his relevant tendons and ligaments were intact, there was

no evidence of fracture, no suspicious marrow signal abnormality was seen, his alignment was

within normal limits, his articular cartilage appeared grossly intact, there was "[n]o definitive

findings of a medial or lateral meniscus defect," there was a small ganglion cyst, but no significant

Baker's cyst, and "[n]o other definitive abnormality [was] seen to explain patient's symptoms."
([Filing No. 13-2 at 23-24](#).)   An examination of his left knee showed "no obvious swelling or
deformity," full range of motion, a stable ligament examination, no tenderness in his tendons, but
"[m]eniscal stress testing reproduce[d] pain laterally," and there was "mild patellofemoral
crepitation but no apprehension."   ([Filing No. 13-2 at 21](#).)   On July 20, 2020, the consulting
orthopedist explained that the MRI scan was incomplete with "[n]o visible meniscal or cruciate
ligament tear," but his "persistent knee pain and clinical exam findings [were] suspicious for [a]
lateral meniscal tear.   We will try and obtain full images of the knee and contact the patient
regarding further treatment recommendations."   ([Filing No. 13-2 at 19](#).)

The updated evidence submitted to the Appeals Council was "suspicious" for a knee
impairment but did not establish that one was medically "determinable."   The plain meaning of
determinable is "capable of being determined, definitely ascertained, or decided upon."   Merriam-
Webster, https://www.merriam-webster.com/dictionary/determinable (last visited March 7, 2022).
Additional diagnostic testing was necessary to definitively ascertain whether Christopher B. had
any medically determinable impairment that would account for his pain.   Accordingly, the updated
evidence did not fill the diagnostic gap that the ALJ considered when evaluating the existing
record.   *See Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012) (holding that "materiality" was
"beyond question" when "new evidence fill[ed an] evidentiary gap" that the ALJ expressly relied
upon).   As Christopher B. points out, the evidence showed a continuation of his symptoms
including persistent pain, and because he received treatment for his knee pain in 2019, the evidence
relates to the period at issue, which is contrary to the Appeals Council's express reason for not
admitting the evidence for further consideration.   However, the continuation of symptoms cuts
against Christopher B.'s contention that the evidence would have a reasonable possibility of

changing the outcome necessary for the evidence to be material. *See Sears v. Bowen*, 840 F.2d 394, 399 (7th Cir. 1988) (cumulative evidence is not considered new and material).

Even if the Court were to conclude that the orthopedic clinical examination showing reproduction of pain with lateral manipulation of the knee was sufficient to objectively demonstrate some impairment of Christopher B.'s meniscus—without any further specificity as to whether there was a tear or the grade of tear, etc.—the presence of a relevant medically determinable impairment would not result in the probable change to the outcome of the ALJ's decision. There is no evidence that such an impairment would not be amenable to treatment. The reason the impairment persisted as long as it had appeared to be because, even with the updated evidence, there has not yet been any definitive diagnosis established to treat. The ALJ considered Christopher B.'s back pain and obesity when he limited him to a range of medium exertional work with certain postural limitations. (Filing No. 13-2 at 37-38.) Christopher B. was considered a younger individual throughout the period at issue. (*See* Filing No. 13-2 at 39.) Even if Christopher B. was limited to the sedentary exertional range, he would not ordinarily be considered disabled as a younger individual. (*See* 20 C.F.R. § Pt. 404, Subpt. P., App. 2, Rule 201.28). As explained in the previous section of the Entry, the VE testified based on her consideration of all the limitations that would ultimately encompass Christopher B.'s RFC, that even if he were further limited to the sedentary exertional range, he would be capable of performing other work in representative occupations such as a factory helper, inspector, and small product sorter with 170,000 jobs in the national economy. (Filing No. 13-2 at 66.)

Additionally, reviewing courts may find an administrative error to be harmless based on the evidence in the record, considered prospectively rather than retrospectively, "if we can predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892

(7th Cir. 2011).  Even if the Appeals Council's explanation that the evidence did not relate to the period at issue was an error, and the limited clinical findings of the orthopedic examination established a medically determinable impairment, the Court does not conclude that such evidence would demonstrate that Christopher B. would be unable to perform the sedentary occupations cited by the VE.  Accordingly, the Court will not remand the case for further consideration of Christopher B.'s knee pain.

## V.   **CONCLUSION**

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010).  For the reasons stated above, the Court finds no legal basis to reverse the ALJ's decision.  The final decision of the Commissioner is **AFFIRMED**.  Christopher B.'s appeal is **DISMISSED**.

**SO ORDERED.**

Date:  3/9/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jonelle L. Redelman
REDELMAN LAW LLC
jonelle@redelmanlaw.com

Javitt Adili
SOCIAL SECURITY ADMINISTRATION
javitt.adili@ssa.gov

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov